UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | |
| JOHN M. DOERFER<br>Debtor. | ) ) ) ) ) | Case No. 05-82665-7 |

_____

**ORDER AND OPINION**
_____

This matter came on for hearing before the court on October 26, 2006 upon Harrington Bank's Motion for Determination of Secured Status filed on March 20, 2006. Joel Craig appeared for movant Harrington Bank, William Miller appeared as Attorney for the Chapter 7 Trustee, Sara Conti appeared as Chapter 7 Trustee, and J. Dickson Phillips and William Janvier appeared for Laura Doerfer. Having considered the matters set forth in the pleadings, the evidence, and the arguments of counsel, the court finds as follows:

Background

John Doerfer (the "Debtor") filed a voluntary petition under Chapter 7 on September 12, 2005. Prior to the Debtor's bankruptcy filing, John and Laura Doerfer separated and began divorce proceedings. Many issues involving the Debtor's bankruptcy estate are intertwined with the ongoing domestic proceedings.

In August 2002, before their separation, Mrs. Doerfer executed a Power of Attorney that designated the Debtor as Mrs. Doerfer's attorney-in-fact (the "Power of Attorney"). The relevant

language of the Power of Attorney is as follows:

> I, Laura B. Doerfer, hereby appoint John M. Doerfer of Chapel Hill, North Carolina, to be my attorney-in-fact (hereinafter "Agent"), to act in my name in any way which I could act for myself, with respect to the following matters as each of them is defined in Chapter 32A of the North Carolina Statutes:
>
> **Real Property Transactions:** My Agent shall have full power and authority to act on my behalf to purchase, convey, and/or refinance any and all real estate within the County of Orange and the State of North Carolina that I currently own or contemplate to purchase. This includes the power to sign any and all documents (including a Deed of Trust and Settlement Statement) required to encumber a property, disburse funds for closing, and extinguish any and all prior liens and encumbrances on a property.

The Power of Attorney was recorded with the Orange County Register of Deeds on August 16, 2002. In his affidavit, the Debtor states that the Power of Attorney was signed to prevent Mrs. Doerfer from having to participate in real estate closings, and that Mrs. Doerfer did not intend to limit the Debtor's ability to act on her behalf with respect to transactions outside of Orange County or transactions not involving purchase, sale, or refinance of property. Mrs. Doerfer disputes that allegation in her affidavit.

The Doerfers acquired property on Strowd Lane in Orange County, North Carolina (the "Strowd Lane Property") in October 2002 as an undeveloped lot. The purchase of the Strowd Lane Property was financed by a $25,000 loan through Central Carolina Bank. The Debtor relied on the Power of Attorney to sign the deed of trust on behalf of Mrs. Doerfer. Subsequently, the Debtor procured a $93,000 equity line of credit from Harrington Bank secured by the equity in the Strowd Lane Property. Again, the Debtor relied on the Power of Attorney to sign his wife's name to the deed of trust, dated March 20, 2003. The deed of trust was recorded with the Orange County Register of Deeds. The Debtor made two draws on this line of credit; the initial draw was a $40,000 check payable to "John M. and Laura B. Doerfer," and the second draw was a

$49,816.59 check payable to "Kirkman Whitford and Brady Trust Account f/b/o John Doerfer," which was used to reduce the secured debt on the Doerfer's second home in Beaufort, NC.

In November 2002, Mr. and Mrs. Doerfer acquired property in Carteret County, North Carolina (the "Front Street Property"). In July 2003, the Debtor obtained a $75,000 real estate equity line of credit from Harrington Bank secured by the Front Street Property; these funds were used to facilitate the purchase of property on Greene Street in Chapel Hill (the "Greene Street Property"). The Debtor states in his affidavit that he relied on the August 2002 Power of Attorney to sign Mrs. Doerfer's name to the necessary documents. The deed of trust for the Front Street equity line was recorded with the Register of Deeds of Carteret County in September 2003.

The Doerfers had previously used powers of attorney to facilitate real estate transactions when Mrs. Doerfer did not wish to participate directly. For example, in July 2003, Mrs. Doerfer executed a specific power of attorney in favor of the Debtor in order to complete the purchase of the Greene Street Property. The power of attorney expired by its terms on July 31, 2003. The Debtor also relied on powers of attorney to complete purchases of property in Orange County on Bayberry Drive, Barclay Road, and Hillsborough Street with mortgages in favor of Harrington Bank, RBC Mortgage, and BB&T. Several of these powers of attorney were durable powers of attorney drafted with reference to North Carolina General Statute § 32A.

Harrington Bank filed two proofs of claim on September 30, 2005 arising out of the two real estate lines of credit described above. Claim Number 9 is a claim for $69,871.89 secured by a deed of trust on the Front Street Property. Claim Number 10 is a claim for $91,037.50 secured by a deed of trust on the Strowd Lane Property. On September 15, 2005, the Trustee initiated an Adversary Proceeding seeking authorization to sell six parcels of real property owned by the

Doerfers and transfer the liens of secured creditors, including Harrington Bank, to the proceeds. After this court issued an order approving the sales, the Front Street and Strowd Lane Properties were sold.  The Trustee received $713,389.10 from the sale of the Front Street Property and $200,000 from the sale of the Strowd Lane Property.  The Trustee has not paid the claims of Harrington Bank from these proceeds.  Harrington Bank subsequently filed this motion seeking determination that it is a secured creditor with regard to the Front Street Property and the Strowd Lane Property, and seeking that it be paid out of the proceeds of the Trustee's sale.

Both parties admit that the Power of Attorney is, at best, poorly drafted, but they disagree on the extent of the powers that the Power of Attorney conferred on the Debtor as Mrs. Doerfer's attorney-in-fact.  With regard to the Strowd Lane Property, Harrington Bank argues that the Power of Attorney, which makes reference to both the statutory definition and a more limited definition of real property transactions, is ambiguous and its language must be harmonized to include the statutory definition.  The Trustee and Mrs. Doerfer disagree, arguing that only the more limited definition of real property transactions should be read into the Power of Attorney, and that an equity line of credit is more properly defined as a "banking transaction" and therefore was unauthorized under the Power of Attorney.

In defending its security interest in the Front Street Property, Harrington Bank argues that the phrase "County of Orange and State of North Carolina" should be read as a description of the property owned by the Doerfers as the time the Power of Attorney was executed and not as a limiting phrase that prevented the Debtor from conducting real property transactions outside of Orange County, North Carolina.  The Trustee and Mrs. Doerfer disagree, arguing that transactions outside of Orange County were expressly prohibited.  Finally, the Trustee and Mrs. Doerfer argue

4

that the Power of Attorney is invalid because it was never recorded in Carteret County, and that the Power of Attorney could not incorporate the definition of Real Property Transactions under § 32A-2(1) without also including the warning language included in the Statutory Short Form provisions of § 32A-1.

## Discussion

There is a paucity of North Carolina case law regarding the interpretation of powers of attorney. In North Carolina, a power of attorney is defined as a written instrument granting power in an agent, or attorney-in-fact, to transact business for his principal. N.C. Gen. Stat. § 47-115.1 (2004); *Cabarrus Bank & Trust Co. v. Chandler*, 63 N.C. App. 724, 726, 306 S.E.2d 184, 185 (N.C. App. 1983). A written power of attorney is an agency contract that creates a principal-agent relationship. *See, e.g., Long v. Schull*, 184 Conn. 252, 256, 439 A.2d 975, 977 (Conn. 1981) (per curiam)*; King v. Bankard*, 303 Md. 98, 106, 492 A.2d 608, 612 (Md. 1985); Rst.2d (Agency) §§ 1, 34 (1958). Therefore, while there is limited North Carolina authority on powers of attorney, the Power of Attorney executed by the Doerfers can be interpreted using ordinary contract principles. Using principles of contract interpretation, this court holds that the Power of Attorney authorized the Debtor to enter into the equity line of credit agreement secured by the Strowd Lane Property in Orange County, but did not authorize the Debtor to do the same for the Front Street Property in Carteret County.

Generally, powers of attorney are strictly construed and grant only the powers enumerated in the writing. *See, e.g., Whitford v. Gaskill*, 119 N.C. App. 790, 793, 460 S.E.2d 346, 348 (N.C. App. 1995); *Jarvis v. Parnell*, 4 N.C. App. 432, 437, 167 S.E.2d 3, 6 (N.C. App. 1969) (". . . [a power of attorney] is to be strictly construed upon the question of whether and how far it bestows

5

authority . . . upon the agent"); *State v. Thomas*, 118 N.C. 1221, 1221, 24 S.E. 535, 535 (N.C. 1896) ("It is familiar learning that an agent acting under a power of attorney cannot transcend the limit of his authority ascertained by a strict construction of the instrument under which he acts."). This does not mean, however, that a power of attorney should be so construed so strictly that it eradicates the very powers that it grants on its face. *See, e.g., Brookfield Prod. Credit Assoc. v. Weisz*, 658 S.W.2d 897, 899-900 (Mo. Ct. App. 1983) ("Although the general rule is that powers of attorney are strictly construed, the rule of strict construction is not absolute and should not be applied to the extent of destroying the very purpose of the power."); *see also* 3 Am. Jur. 2d Agency §§ 29-30 (1962).  It is a well-settled principle of contract construction that "[i]t must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Cater v. Barker*, 172 N.C. App. 441, 617 S.E.2d 113 (N.C. App. 2005) (citing *Hagler v. Hagler*, 319 N.C. 287, 294, 354 S.E.2d 228, 234 (N.C. 1987)).  Furthermore, "parties can differ as to the interpretation of contract language without it being ambiguous." *Walton v. City of Raleigh*, 342 N.C. 879, 881-82, 467 S.E.2d 410, 412 (N.C. 2000).  Although the parties disagree about the meaning of the plain language of the Power of Attorney, this disagreement does not prevent this court from finding that a strict construction of the plain language of the Power of Attorney lends itself to only one interpretation.

      Mrs. Doerfer asserts that the Power of Attorney only granted the Debtor the power to purchase, sell, or refinance property, and that the Strowd Lane transaction was not authorized because, as she contends, a real estate line of credit is a banking transaction as defined by § 32A-

2(4). This court does not agree with this contention.[1] The plain language of the first paragraph of the Power of Attorney defines the Debtor's authority by incorporating by reference the statutory definition of Real Property Transactions found in North Carolina General Statute § 32A-2(1). Under § 32A-2(1), an attorney-in-fact has the power:

> [t]o lease, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as said attorney-in-fact shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens, mortgage, subject to deeds of trust, and in any way or manner deal with all or any part of any interest in real property whatsoever, that the principal owns at the time of execution or may thereafter acquire, for under such terms and conditions, and under such covenants, as said attorney-in-fact shall deem proper.

When a contract incorporates a statute by reference, that statutory section becomes a part of the contract for parties' indicated purposes "as if the words of that regulation were set out in full in the contract." *U.S. v. Ins. Co. of North America*, 131 F.3d 1037, 1042 (D.C. Cir. 1997) (citing, *inter alia*, *Washington Metro. Area Transit Auth v. Mergentime Corp.*, 626 F.3d 959, 962 n.3 (D.C. Cir. 1980)). In light of North Carolina's constitutional guarantee of freedom to contract, *see, e.g.*, *Turner v. Masias*, 26 N.C. App. 213, 217 (N.C. App. 1978), the Doerfers had an unfettered right to incorporate the statutory definitions of § 32A-2, or any other definition that they desired, into their personal Power of Attorney. Admittedly, the Power of Attorney did not

---

[1] N.C. Gen. Stat. § 32A-2(4) defines banking transactions as the ability to "make, receive, sign, endorse, execute, acknowledge, deliver, and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts, and deposit instruments relating to accounts or deposits in, or certificates of deposit of, banks, savings and loan or other institutions or associations for the principal." The Trustee and Mrs. Doerfer contend that because a real estate line of credit involves the execution of a note, it more properly fits into the definition of banking transactions. However, the word "note" in the above definition is later modified by the phrase "relating to accounts or deposits in, or certificates of deposit of, banks . . . ," which plainly does not apply under these facts.

comply with the Statutory Short Form provided in § 32A-1, but, under § 32A-3, parties to a Power of Attorney may use a different form if they so desire.  N.C. Gen. Stat. §§ 32A-1, 32A-3. Therefore, the incorporation by reference of § 32A-2(1) must be given effect, and the Debtor had expansive authority to engage in real property transactions on behalf of Mrs. Doerfer.   This court is not persuaded that a real estate line of credit, which subjects real property to a lien and a deed of trust, should not be read into this very expansive definition of real estate transactions.

> The  Trustee and Mrs. Doerfer disagree, contending that the language in the Power of Attorney under the heading "Real Property Transactions" that gave the Debtor the power to "purchase, convey, and/or refinance" real property was limiting language, intended to narrow the scope of permitted real property transactions defined by § 32A-2(1).  However, it is a "cardinal principle of contract construction . . . that a document should be read to give effect to all its provisions and render them consistent with each other," *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 63 (1995), and thus each clause of the Power of Attorney must be analyzed as part of the larger whole.

> In its first paragraph, the Power of Attorney expressly granted the Debtor the right to engage in real property transactions as they are defined in the statute.  The heading of the next section is "Real Property Transactions," which is defined in § 32A-2(1), *supra*.  If the Debtor and Mrs. Doerfer had not intended for the Debtor to be granted all of the powers contained in the statutory definition of Real Property Transactions under § 32A-2(1), they could have omitted the statutory reference.  However, looking to the plain language of the Power of Attorney, the definition must be given effect and be included in the Debtor's grant of authority.

Furthermore, the second sentence of the paragraph entitled "Real Property Transactions" (the "second sentence") explains that the Debtor's expansive authority under the Power of Attorney "*includes* the power to sign *any and all* documents (including a Deed of Trust and Settlement Statement) required to encumber a property, disburse funds for closing, and extinguish any and all prior liens and encumbrances on a property." (emphasis added).  The broad "any and all" language of the second sentence coupled with the use of the word "includes," indicating that the second sentence is not an exhaustive list of the Debtor's powers under the Power of Attorney, is not consistent with the narrow reading requested by the Trustee and Mrs. Doerfer.

Although powers of attorney should be construed strictly, the court notes that the rule of strict construction does not require a "strained interpretation," and conflicting clauses should be reconciled to give an effect to the power of attorney in keeping with its "general intent or predominant purpose."  3 Am. Jur. 3d Agency § 30 (2006); *see also McLaren Gold Mines Co. v. Morton*, 124 Mont. 382, 391, 224 P.2d 975, 979 (Mont. 1950) (". . . the grant of power is not to be frittered away by the very nice and meta-physical distinctions when the general tenor of the instrument is in favor of what was done under the power. . .").  If the Power of Attorney were read narrowly to include only purchasing, selling, or refinancing property, as requested by the Trustee and Mrs. Doerfer,[2] both the reference to the statute and the second sentence would be

---

[2]Counsel for the Trustee also argued at the hearing that the second sentence of the Power of Attorney gave the Debtor the power to sign a deed of trust, but did not give him the power to sign a promissory note.  Because subjecting real property to a mortgage requires execution of both a deed of trust and a note, *see, e.g., In re Azalea Garden Bd. & Care, Inc*., 140 N.C. App. 45, 51, 535 S.E.2d 388, 393 (N.C. App. 2000); *Walston v. Twiford*, 248 N.C. 691, 693, 105 S.E.2d 62, 64 (N.C. 1958), this court is not prepared to allow such a strained interpretation that yields an absurd result, especially in light of the facially broad language of the second sentence.  *See, e.g., In re Convenience USA, Inc*., 2003 WL 21459559, Nos. 02-81478C-11, 01-81489C-11 (Bankr. M.D.N.C. June 17, 2003) (stating that strained interpretations are disfavored); *see also*

surplusage. Surplusage is disfavored in contract interpretation. *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.3d 274, 277 (4th Cir. 1987) ("It is a universal law of contract law that, in construing language in a contract, an interpretation that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless."); *see also Volvo Const. Equip. of North America, Inc. v. CLM Equip. Co., Inc*., 386 F.3d 581, 614 (4th Cir. 2004). To give effect to all of the contract provisions, the full text of the statutory definition of real property transactions and the expansive powers of the second sentence must be read into the Power of Attorney as they are expressly written. *See, e.g., Fierst v. Commonwealth Land Title Ins. Co.*, 499 Pa. 68, 75, 451 A.3d 674, 676 (Pa. 1982) ("Powers expressly granted [under a power of attorney] will not be restricted by implication nor will a construction be made which will effectively defeat the very purpose of the agency.") (citations omitted). Therefore, the Debtor was authorized to enter into the real estate line of credit secured by the Strowd Lane Property, and Harrington Bank is a secured creditor with regard to the Strowd Lane transaction.[3]

Using the same principles of strict construction and plain language, this court finds that the Power of Attorney did not grant the Debtor the right to enter into real property transactions on

---

*Brookfield Prod. Credit Assoc*., 658 S.W.2d at 899-900 (holding that a power of attorney that granted the attorney-in-fact the authority to apply for "loans which may be secured by personal property" also gave him the authority to sign promissory notes); *Malaguti v. Rosen*, 262 Mass. 555, 160 N.E. 532 (Mass. 1928) (same); *In re Kurrelmeyer*, 895 A.2d 207, 213 (Vt. 2006) (holding that a broadly drafted agreement empowering the attorney-in-fact to execute trust instruments granted the attorney the power to create a trust, even though such power was not expressly delineated, because a trust instrument is commonly understood to create a trust).

[3] It is also worth noting that some courts have found that a principal who does not disavow the act of their agent within a reasonable time is bound to it. *See, e.g., McLaren Gold Mines*, 124 Mont. at 396, 224 P.2d at 982. There is no evidence that Mrs. Doerfer disavowed any acts of the Debtor until after their legal separation and the Debtor's bankruptcy case had commenced.

behalf of Mrs. Doerfer in any county other than Orange County.  The Power of Attorney gave the Debtor the ability to conduct transactions in the "County of Orange and State of North Carolina." Harrington Bank argues that the Power of Attorney was intended to cover every county in which the Doerfers owned property, and that once the Doerfers acquired property in Carteret County, the Debtor was authorized under the Power of Attorney to conduct real estate transactions in Carteret County.  This interpretation contradicts the Power of Attorney's plain language.

It is a well settled point of contract interpretation that the use of the conjunctive "and" requires that both conditions be met.  *Harrell v. Brown*, ___ S.E.2d ___, 2006 WL 2946495, No. COA 06-256, at *2 (N.C. App. Oct. 17, 2006) (". . . when the conjunctive 'and' connects words, phrases, or clauses of a statutory sentence, they are to be considered jointly"); *see also Bridgers v. Ormond*, 153 N.C. 113, 113, 68 S.E. 973, 974 (N.C. 1910) (holding that to substitute the conjunctive "and" for the disjunctive "or" would fundamentally alter the meaning of a material element of the contract, and thus was inappropriate).  Therefore, under the Doerfers' Power of Attorney, the Debtor was only authorized to enter into real property transactions that took place both in Orange County and in North Carolina.  Transactions in counties other than Orange County, including Carteret County, were not authorized.  *See O'Grady v. First Union Nat'l Bank*, 296 N.C. 212, 225, 250 S.E.2d 587, 596 (N.C. 1978) (holding that a power of attorney that was limited to Robeson County, NC was not effective to authorize real property transactions in Rocky Mount, NC and South Carolina); *Wilcox v. McLeod*, 182 N.C. 637, 637, 109 S.E.2d 875, 876-77 (N.C. 1921) (holding that a power of attorney restricted to Guilford County was not effective in Moore County).

It is the duty of a party dealing with a purported agent to ascertain both that the purported agent is actually an agent and the extent of his authority. *Harvel's Inc. v. Eggleston*, 286 N.C. 388, 394,150 S.E.2d 786, 792 (N.C. 1966) (citing *Edgewood Knoll Apartments v. Braswell*, 239 N.C. 560, 573, 80 S.E.2d 653, 663 (N.C. 1954)). The burden was therefore upon Harrington Bank to recognize that the Power of Attorney was obviously limited to transactions occurring in Orange County, North Carolina.[4] Thus, the real estate equity line of credit secured by the Front Street Property, located in Carteret County, was not authorized under the Power of Attorney, and Harrington Bank has no secured interest in the Front Street Property based on the same.

Because the Power of Attorney did not authorize the Front Street Property real estate equity line of credit, the Debtor could not have encumbered the Front Street Property without written joinder of Mrs. Doerfer. North Carolina General Statute § 39-13.6(a) provides that neither spouse may "bargain, sell, lease, mortgage, transfer, convey, or in any manner encumber any properties held in tenancy by the entireties" without the written joinder of the other spouse. It is undisputed that the Front Street Property was held by the Doerfers as tenants by the entirety. Because, the Power of Attorney does not provide "written joinder" of Laura Doerfer, absent any other written joinder of Mrs. Doerfer, Harrington Bank does not hold a properly secured lien against the Front Street Property.

The Trustee and Mrs. Doerfer make two additional arguments that must be addressed. First, the Trustee argues that because the Power of Attorney was never registered in Carteret County, it could not have authorized the Front Street Property transaction. Because this court

---

[4]At the hearing, counsel for Harrington Bank informed the court that it is the policy of Harrington Bank not to engage counsel or require title insurance for transactions involving less than $100,000.

12

holds that the Front Street Property transaction was not authorized under the Power of Attorney, this argument is moot.[5]

Finally, the Trustee and Mrs. Doerfer argued at the hearing that the Power of Attorney was invalid because it did not contain the warning language required by North Carolina General Statute § 32A-1 to be included on a North Carolina Statutory Short Form Power of Attorney. However, by incorporating a definition from the statute, the parties do not automatically subject themselves to every provision of the statute. *See*, *e.g.*, 3 Williston on Contracts § 30:19 (Richard A. Lord ed., 4th ed. 1999) ("[P]arties to a contract who are not otherwise subject to a statute may choose to incorporate parts of the statute to define their relationship without bringing the full force of the statute to bear."). The Doerfers did not use the Statutory Short Form Power of Attorney, but merely incorporated by reference a definition contained in the North Carolina statutes regulating Short Form Powers of Attorney. In fact, the warning referred to by the Trustee actually alerts potential agents and principals that Chapter 32A expressly permits the use of any other or different form of power of attorney desired by the parties, as the Doerfers chose to do. N.C. Gen. Stat. §§ 32A-1, 32A-3. There is no evidence that the parties intended to be bound to any provision of the North Carolina statutes governing powers of attorney other than the definition of Real Property Transactions in § 32A-2(1).

---

[5] However, the parties' failure to record the Power of Attorney in Carteret County would not have been fatal if this court had found that the Power of Attorney did authorize the Front Street Property transaction. *See Cabarrus Bank & Trust Co. v. Chandler*, 63 N.C. App. 724, 726, 306 S.E.2d 184, 186 (1983) (holding that, if the principal is competent, a written power of attorney is effective without recordation).

13

For the above reasons, this court finds that Harrington Bank is the holder of a secured claim secured by the Strowd Lane Property located in Orange County, but is not a secured creditor with respect to the Front Street Property located in Carteret County. Accordingly, Harrington Bank's Motion to Determine Secured Status is GRANTED IN PART and DENIED IN PART.

**SERVICE LIST**

Stephanie Osborne-Rodgers
P. O. Box 2208
Chapel Hill, NC 27515-2208

William Janvier
P. O. Box 911
Raleigh, NC 27602

J. Dickson Phillips, III
Susan Lewis
P.O. Box 4825
Chapel Hill, NC 27515

Joel M. Craig
P. O. Box 51579
Durham, NC 27717-1579

Richard M. Hutson, II
P. O. Box 2252-A
Durham, NC 27702

William P. Miller
P.O. Box 1550
High Point, NC 27261

Sara Conti.
Box 939
Carrboro, NC 27510-0939

Michael D. West
P. O. Box 1828
Greensboro, NC 27420-1828